E9u0burs                         Sentence

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                              12 CR 626-06

5    KEVIN BURDEN,

6                   Defendant.

7    ------------------------------x

8                                             New York, N.Y.
                                              September 30, 2014
9                                             10:00 A.M.

10

11
     Before:
12
                          HON. EDGARDO RAMOS,
13
                                              District Judge
14

15                         APPEARANCES

16   PREET BHARARA
          United States Attorney for the
17        Southern District of New York
     ANDREW BAUER
18   KAN M. NAWADAY
     Assistant United States Attorneys
19
     LEE GINSBERG
20   AVRAHAM MOSKOWITZ
     Attorneys for Defendant
21

22

23

24

25

E9u0burs                    Sentence

1           (In open court; defendant present)

2           THE COURT:  Please be seated.

3           United States v. Kevin Burden.

4           Could you please state your name for the record.

5           MR. BAUER:  Andrew Bauer, for the government.

6           THE COURT:  Mr. Bauer.

7           MR. GINSBERG:  Good morning, your Honor, Lee Ginsberg

8    and Avi Moskowitz, appearing for Mr. Burden.

9           THE DEFENDANT:  Good morning, your Honor.

10          MR. GINSBERG:  If I might, your Honor, I wanted to

11   note Nancy Tricamo, who is our mitigation specialist who worked

12   on the case is present in the courtroom.

13          THE COURT:  Good morning to you all.

14          And good morning to you, Mr. Burden.

15          THE DEFENDANT:  Good morning, sir.

16          THE COURT:  This matter is on for sentencing.

17          And in preparation for today's proceedings, I have

18   reviewed the presentence report dated April 25, 2014, prepared

19   by probation officer Kisha Singleton, which includes a

20   recommendation.  I have also reviewed the letters from Mr.

21   Burden's attorneys and mitigation specialist dated September

22   19, 2014, and a supplemental letter from the mitigation

23   specialist dated September 26, 2014.

24          I have not received a submission from the government,

25   is that correct Mr. Bauer?

E9u0burs                          Sentence

1          MR. BAUER:  That's correct, your Honor.  Since we

2     expedited the sentencing, the government did not have an

3     opportunity to put in a submission.  What I did hand up to your

4     Honor is a document that you are familiar with from the trial

5     that happened last month.  It is the transcript of the excerpts

6     from the video between Mr. Burden and the cooperating witness

7     Jamar Mallory.  And I submit that in lieu of a formal

8     submission.

9          THE COURT:  Very well.  I am familiar with this

10    document.

11         Let me begin with you, Mr. Ginsberg.  Have you

12    received a copy of the presentence report and discussed it with

13    your client?

14         MR. BAUER:  Yes, your Honor.

15         THE COURT:  And, Mr. Burden, did you receive a copy of

16    the presentence report and discuss it with your attorney?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Are there any objections to the report

19    regarding its factual accuracy?

20         MR. GINSBERG:  No, your Honor.

21         THE COURT:  Very well.  Although I am not required to

22    impose a sentence within the guideline range, I am required to

23    consider the guidelines in imposing sentence.  And to do so, I

24    need to make that calculation.

25         Mr. Burden entered a plea of guilty to a superseding

E9u0burs                        Sentence

information charging him with a violation of 18 U.S.C.

Section 924(h), providing a firearm to another with the

knowledge that it would be used in connection with a crime of

violence or a drug trafficking crime.  That count carries a

maximum term of imprisonment of 10 years.

        The offense base offense level for Mr. Burden's

offense is 43, pursuant to 2K2.1(c)(1)(B)of the U.S. Sentencing

Guidelines because a victim was killed in connection with the

offense under circumstances that would constitute murder under

18 U.S.C. Section 1111.

        From that, three levels are deducted because Mr.

Burden pled guilty and accepted responsibility for the offense,

and did so in a timely manner.

        And, Mr. Bauer, is the government not objecting to an

additional reduction of two levels?

        MR. BAUER:  On what grounds, your Honor?

        THE COURT:  On the ground that -- I guess the drug --

well, those would only affect the drug trafficking offenses,

correct?

        MR. BAUER:  Yes, your Honor.

        THE COURT:  That yields a total offense level of 40.

And Mr. Burden is in criminal history category III and,

therefore, is facing a guidelines sentence of 360 to life.

However, because of the particular charge to which he pled

guilty he is only looking at a maximum of 120 months, and that

E9u0burs                        Sentence

1    is the effective guideline range.

2               Is there any objection to that calculation, Mr.

3    Ginsberg?

4               MR. GINSBERG:  No, your Honor.

5               THE COURT:  Mr. Bauer.

6               MR. BAUER:  No, your Honor.

7               THE COURT:  Does the government wish to be heard prior

8    to sentence being imposed.

9               MR. BAUER:  We do, your Honor.

10              Judge, I imagine that a lot of the conversation here

11   today from defense counsel is gonna be about Mr. Burden's

12   medical condition.  And rightfully so. It seems incredibly

13   serious and, in particular, it seems to have had a significant

14   impact on Mr. Burden.

15              I can confirm for you that I have spoken to the MCC

16   personnel that, because of the kidney infection that Mr. Burden

17   is suffering from, because of the thrice weekly dialysis

18   treatments that he has been forced to undergo, he -- I think it

19   was about two weeks ago that he began refusing treatment and

20   pulling the cords out of his arms.

21              So, certainly, the condition is serious, as well as

22   how it is treating him -- or how it is affecting him

23   psychologically and emotionally is very serious.  All that

24   said, your Honor, I don't want the medical conversation to

25   swallow what we're doing here.  We're here to sentence

E9u0burs                         Sentence

Mr. Burden for conduct, very serious criminal conduct that you,

after sitting through the trial of three of his co-defendants

are all too familiar with.

          I handed up the excerpts of the recorded meeting

between Kevin Burden and Jamar Mallory.  It was played

throughout trial on a couple of occasions.  And defense counsel

and Mr. Burden have had that tape now for a couple of years.

It demonstrates, your Honor, as you know, just how serious and

how involved Mr. Burden was in the criminal atmosphere in

Newburgh.

          There is one excerpt in which he talks all about what

it's like, and why it's important to join the Newburgh Bloods,

teaches you to have faith in yourself as a man, how to be a

grown man.  The powers that be just being Blood.  It should be

about being better.

          He was, as you know, your Honor, Mr. Burden was a high

ranking member of the Bloods.  He hosted Blood meetings at his

house at 261 Street.  He also sold drugs on a number of

occasions with the trial defendants out of that house on 261

Street.  261 Street was a weed spot.  They sold marijuana.  But

cooperating witnesses testified at trial that they saw him

selling crack along with other trial defendants, including we

heard, Tyrell Whittaker.  And then, of course, there is his

involvement with the guns.  And much of the excerpts here

relate to the chrome joint, the chrome gun that he had gotten

E9u0burs                    Sentence

1    the week before, and he was loaning out to L-1 to do this

2    robbery.  But, Judge, that evidence is before your Honor in

3    great detail, so I won't belabor it too much.  But I will point

4    you to excerpt five, where he talks about having two other

5    guns.  Because he was beefing with the Jamaicans.  It was a

6    short excerpt.  It said, remember, I told you I was beefing

7    with Jamaicans and I had the guns with me at tall times, do you

8    feel me?  I keep two in the bookbag and two in my waste -- I'm

9    sorry, that is four guns that he mentioned on that tape.

10           Mr. Burden was a highly-connected seriously-involved

11    member of the bloods.  And what that meant was this very, this

12    very violence, the violence that, when he handed a gun to

13    Tyrone Whittaker and Glenn Thomas, it was without dispute that

14    he did not know that someone was going to die that night.  We

15    have never said that.  It's frankly the reason why we allowed

16    him to plead guilty to the 924(h) charge in recognition that he

17    didn't know there was going to be a murder.  But what he did

18    know was that he was handing a gun to two violent individuals

19    to go do a violent robbery in which it's not surprising that

20    gunfire erupted.  It is not surprising that people were shot.

21    It is not surprising that somebody died.  And that is about as

22    serious conduct as you can get.

23           Judge, he has gotten an incredible benefit, frankly,

24    by being able to plead guilty to the 924(h) charge.  The proof

25    was very strong against him.  You saw it.  And we could have

E9u0burs                    Sentence

1    very easily kept the line and told him he had to plead to the

2    924(j), which his guidelines here would be life.  There would

3    be no statutory cap.

4           But in our effort to be reasonable, and in an effort

5    to reflect what we think Mr. Burden's conduct was, is he was

6    just handing guns over because another member of the bloods

7    asked him for it.  We thought that the 10 year number was

8    appropriate.  Now you're faced with the additional information

9    of his medical treatment.  And I do not want to belittle it.

10   But, what I will say, is that I've spoken to people in the BOP.

11   And they have represented to me Mr. Burden will almost

12   certainly be designated to a medical facility, either Devons or

13   Butner.  Those facilities are specifically designed to handle

14   treatment that Mr. Burden needs.  In fact, they were telling me

15   about a kidney transplant that took place at, I think it was

16   Butner, last year.  I have no doubt that this MCC arrangement

17   for his dialysis has been hard on him.  It has been hard on the

18   MCC, as well.  They have a slightly different view as to how it

19   has all happened, as compared to Mr. Ginsberg and Moskowitz's

20   view.  But they are, admittedly, not equipped to handle

21   bringing Mr. Burden to dialysis three times a week.  It has not

22   been a good set-up.  I have no quarrel with that.

23          What I am suggesting, your Honor, is that when he gets

24   to Butner, or when he gets to Devons, that will be a good

25   set-up for him.

E9u0burs                          Sentence

1          And in defense counsel's submission, they suggest that

2     Mr. Burden knows of a place in Newburgh where he can start

3     getting dialysis there.  I don't know.  So I won't speculate,

4     except for to say I'm not sure if that is going to be any

5     better than what he will get at a dedicated facility like

6     Butner or Devons, where he will be there and be able to receive

7     treatment on a regular basis, without the complexity of this

8     transport that he has had to deal with since he has been at the

9     MCC.

10         THE COURT:  Because I have only seen Mr. Ginsberg's

11    letter, what is the MCC saying about the current situation, the

12    current set-up.

13         MR. BAUER:  Well, they were the ones who had asked me

14    to expedite the sentencing a couple of months ago, once they

15    realized that this dialysis was necessary.  And when I had

16    attempted to do that, Mr. Burden -- Mr. Moskowitz and Mr.

17    Ginsberg wanted to really understand what the medical condition

18    was because, rightfully so, they wanted to present it to your

19    Honor.  So they wanted him out of the MCC for a couple of

20    months, both for their benefit and for his.

21         They have been very candid that this has not been an

22    easy set-up for them, between the marshals having to do the

23    transport, or the MCC doing the transport.  It has been very

24    difficult on them.  And so they, when posed with the situation

25    that we were last week when we were told that he was now

E9u0burs                          Sentence

```
 1   refusing treatment and refusing the transport to the hospital,
 2   that is when we came up with the solution of just getting this
 3   on your calendar as quickly as possible.  And that's why we're
 4   here today.  But the MCC is very eager to have him transported
 5   and moved to a facility at Devons or Butner.  So the one
 6   specific request, besides the guidelines of 120 months, your
 7   Honor, is that you enter the judgment, if it at all possible
 8   today, or as soon as practicable for your Honor.  That way we
 9   can expedite his designation out of the MCC.
10            THE COURT:  I don't have, before me, anything from a
11   doctor concerning his current medical condition.
12            Have you spoken with medical personnel at MCC, Mr.
13   Bauer?
14            MR. BAUER:  No, I have not.  I have spoken to the
15   lawyers at MCC who have spoken to the doctors.  So it's a bit
16   of a game of phone tag, or telephone, sorry.  But everything
17   that they have told me is consistent with what is in Mr.
18   Moskowitz' and Mr. Ginsberg's letters, as well Ms. Tricamo, I
19   think, her letter as well.  And that is that it is an
20   incredibly serious kidney infection that requires dialysis and
21   will ultimately require, or is likely require a transplant.
22            THE COURT:  Okay.  Thank you, Mr. Ginsberg.  Or Mr.
23   Moskowitz.
24            MR. GINSBERG:  Thank you, your Honor.
25            There is a lot of different layers, I think, to this
```

1   sentencing argument that I am making here this morning.

2          To begin with, I think it's fair to say that the

3   government did justice when they offered the plea that they did

4   to Mr. Burden.  And I think Mr. Bauer recognizes that, today,

5   notwithstanding the fact that the guidelines still point your

6   Honor towards the murder guideline, so the numbers are very

7   high.  I think the government realized, early on in this case,

8   the limitation of Mr. Burden's involvement and conduct.  And so

9   that's why they offered the plea which caps the sentence at 120

10  months.

11         And I bring that up first for two reasons.  One, I

12  think it's a credit to the government that they recognized that

13  and did that.  Because, as your Honor knows, both from this

14  part of your life and your prior history, that that is not

15  always the case.  It's not always recognized that way which

16  makes it much more difficult at the time of sentence, because

17  the range could be so wide that it's harder to focus in on what

18  the right sentence is to do, when you are looking at a

19  360 month possibility.

20         Secondly, I think it is important, because I think the

21  focus should be on the 0 to 120 months.  Notwithstanding the

22  fact that the guidelines are what they are, that's where I

23  believe we should be looking.  Not just because there is a

24  statutory cap, but because essentially the government said in

25  making that plea offer, this is the range where we think an

1    appropriate sentence can be meted out.

2              It's not only that Mr. Burden is now suffering from

3    the medical condition that he has, he has a history which we

4    presented to your Honor in our submission, with some

5    documentation and with the letter, and the portions of

6    Ms. Tricamo's earlier submission that she made to us in the

7    death penalty phase, to demonstrate that his was not an easy

8    life to begin with.  That, frankly, not because of his own

9    doing, and consistent with many other cases that we see in this

10   courthouse, Mr. Burden was in a situation from his early

11   childhood where he did not have the kind of support and

12   guidance and love and protection of a family or parents that

13   one would hope everybody would have in their life.

14             And for that reason, among others, he ended up in and

15   out of institutions for most his young life, and through his

16   teens.  We didn't want to burden the Court with literally the

17   two and a half or three boxes of records that we have from all

18   of those facilities.  But Mr. Moskowitz and I have those boxes

19   in our office, and we read through those documents.  And it

20   suggests, if nothing else, how a person like Mr. Burden ends up

21   in a situation like he was when he was arrested for this case,

22   and for so many other conduct that is mentioned in the

23   probation report that occurred before this case.

24             And as I'm sure you have heard many times, I'm not

25   saying this to excuse the current conduct, but there is a

E9u0burs                      Sentence

1    history.  There is a history that sets the framework for how it

2    got to be like that.  This is not an individual who was working

3    for a hedge fund and making ten, twenty million dollars a year

4    and decided to be greedy and make another $20 million a year,

5    and had everything in life that life can afford to that person,

6    but it wasn't enough.  We're talking about a very different

7    situation.  And I think that would have been the principle

8    argument that we would have made, in addition to the 120 month

9    cap, had the current medical situation not occurred.

10           And we're not here today in a malpractice lawsuit.

11   And I'm not going to ask your Honor to make a determination as

12   to how this came to be.  I can tell you, your Honor, as an

13   officer of the court, that when I first found out about the

14   current medical condition that Mr. Burden has, I immediately

15   took responsibility.  Because I thought that it was something

16   that I didn't do, or Mr. Moskowitz didn't do, because we were

17   not paying enough attention to our client.  Even though we knew

18   we had seen him regularly, and we had talked to him about all

19   of his issues, and we had Ms. Tricamo working with us.  We got

20   his records, his whole history, his school records, spoken to

21   his family.  I really had the sense of panic that I was at

22   fault and I missed something.

23           Once we got the records from the facility and we had

24   the records independently reviewed by medical professionals, I

25   guess it was a small relief to me that at least I was not at

E9u0burs                        Sentence

1    fault.  But it is not a relief to Mr. Burden as to how this

2    occurred.

3            And, again, I'm going to say I don't want to point

4    fingers, but what I will say, in this instance and more

5    generically, is that I have had too many cases over the last

6    number of years, where situations either like this or close to

7    this, have occurred.  And, in fact, coincidentally, I'm

8    currently on trial before Judge Engelmeyer.  And when I left

9    the building the other day, I ran into -- not literally, but I

10   saw Judge Sullivan on the street with his trial advocacy class.

11   And I stopped him, because he is the liaison to the MCC and

12   MDC.  And I told him, as soon as I had enough time, I was going

13   to send him a letter.  Not just about Mr. Burden's case, but

14   about two other cases that I currently have, where situations

15   almost as acute as this, are going on.  And in which no matter

16   how many times I have raised it with the assistant -- and it's

17   not their fault.  And how many times they have called the

18   facility, and they have spoken to the Legal Department, and we

19   have had to raise it in court to a judge, these situations

20   simply get out of hand.  And it may be that the Bureau of

21   Prisons medical facilities, outside of the immediate New York

22   City area are better equipped to deal with situations like

23   this.  But it doesn't mean that people should end up in

24   situations like this because local facilities don't have the

25   capability, or desire, or whatever else it is that is missing,

1  to be able to deal with situations before they become so acute

2  that somebody's life is on the line.

3          Now, all of that speaks to, I hope, what an

4  appropriate sentence is in this case.  Certainly, I suppose,

5  your Honor can take some comfort that if you sentence

6  Mr. Burden to additional jail time, the treatment he will get

7  at Lexington or Devons or some other place, will be better,

8  because it has to be, than what was happening in the MCC.  It

9  was not only the medical treatment, however.  And that's why we

10  submitted, just the other day, the letter from Ms. Tricamo who

11  may be one step removed from the partiality that we have, from

12  the subjectiveness that Mr. Moskowitz and I have in this case.

13  Because she visited with Mr. Burden at the hospital and spoke

14  to people at the hospital, and was able to communicate on a

15  different level after speaking to them and Mr. Burden, not only

16  the medical treatment or lack thereof, but the psychological

17  state that he was in, and the emotional treatment,

18  psychological treatment that was being put upon him by others

19  who don't understand that even if you're an inmate at a jail

20  charged with a serious crime, it doesn't make you less of a

21  human being, and you ought to be treated in the way that

22  anybody else should be treated.

23          And as much as almost anything else, that has caused a

24  profound psychological effect on Mr. Burden.  Not only is he

25  facing this chronic disease that may cause him to have dialysis

1   forever, or kidney transplant, or shorten his life, he has to

2   hear from other people and be treated from other people as if

3   he is some kind of a pariah, which does nobody any good but, in

4   fact, has occurred.

5            I don't know that putting him in jail to get medical

6   treatment at a facility is going to specifically deter him from

7   further criminal conduct, any more than the fact that he is

8   going to have to go to a dialysis center two, three, four days

9   a week, or maybe be admitted from time to time to a medical

10   facility for constant treatment.  If your Honor believes that

11   that's not enough of a deterrent upon him from committing

12   crime, and he also has to be locked up, you certainly have the

13   authority to make that decision.

14            In terms of general deterrence -- and I just -- I want

15   to speak to those two issues.  Because it seems to me often

16   that is where the decision comes down to.  In terms of general

17   deterrent, I don't think anybody in the public, or anybody who

18   has considered committing a serious crime would say to

19   themselves, Kevin Burden was only in jail for a couple of

20   years, and he was released to spend the rest of his life on

21   dialysis, so I'm going to go commit a crime, too, because I'm

22   not going to get a serious jail sentence.  I don't think the

23   wrong message would be sent to the public or to the community

24   if your Honor were to release Mr. Burden and allow him to have

25   medical treatment and to be home with his family.  And without

E9u0burs                          Sentence

being overly dramatic about that, we don't know how much longer
he has to be either home with his family or in a medical
facility.  None of us here know where this is gonna lead, or
whether if he needs a kidney transplant one is going to be
available, or whether it will be accepted or rejected by his
body.  So I think when we talk about punishment, there are many
forms of punishment.  And I'm not sure what's worse, to be put
back into jail for a period of time, or to have to live through
what he has lived through, and will live through, for the rest
of his life.  And I take into consideration the crime that was
committed here and what he did.

        And I'm glad that your Honor was able to sit through
the trial of this case, and knew about this transcript.
Because I think it puts his role in the right perspective, as
did the government's plea offer.  And, frankly, as did this
entire conversation which Mr. Moskowitz and I have reviewed
many, many times, where he concedes that there were guns that
were given to somebody but basically says he didn't know what
they were going do.  It was even in a Motion to Suppress
submission to the Court.  And the government has said here,
today, he never -- he never knew.  So that, I think, also
limits it.  Whether or not the fact that the day he made any of
these statements, he was already high because he smoked
marijuana, or got higher because the cooperating witness
continued to pour him, I think it was whiskey from a bottle at

E9u0burs                    Sentence

the hotel to try to get him to say more things, which he

didn't, because he kept saying I didn't -- I didn't know what

was going to happen with that, even though he was asked.  Maybe

puts some more perspective that your Honor wouldn't have

otherwise had if this was just a plea with no trial and the

rest that your had not seen already about what who did what.

          So having said all of that, I respectfully ask this

Court to balance all of the equities here -- and there are very

serious mitigating equities that almost never exist in cases

like this.  Sometimes they are.  Sometimes they do.  And

sentence Mr. Burden to the time that he has already served in

jail, which is not an insignificant amount of time.  And to let

him get the medical treatment that he needs, and be with his

family, so at least he can have the comfort of being around

people who care for him, and will support him, and won't make

it even that much more difficult for him to live with his

situation.

          And I'm happy to answer any other questions.  Mr.

Moskowitz is here.  Ms. Tricamo, who saw Mr. Burden at the

hospital the other day, and Mr. Moskowitz saw him last night at

the hospital, can address or answer any questions your Honor

might have as to specific situations.

          THE COURT:  Can anyone give me some idea as to what

his medical prognosis is?

          MR. MOSKOWITZ:  Your Honor, I spoke at length to

1    Mr. Burden's doctors yesterday.  As Mr. Ginsberg I think

2    indicated, nobody can give a certain prediction as to what the

3    course here is.  What they said is, he will require dialysis at

4    least three days a week for the rest of his life.  He is a

5    candidate, at some point, for a kidney transplant.  And he is a

6    young man.  He is otherwise -- you know, assuming they can get

7    this under control, he is otherwise healthy.  Whether he would

8    qualify, whether he would get one, that's you know the vagary

9    of the list, your Honor, is probably as equally familiar as I

10   am.

11           I can tell the Court, your Honor may know we had a

12   little difficulty in arranging to get him here.  I ran over

13   there last night to help make the arrangements.  Part of the

14   issue was that he was scheduled for surgery as early as today

15   to put in a permanent port so that the dialysis can be

16   accomplished more easily.  It is my hope, one of the things

17   we -- well, depending on the sentence, Mr. Burden is scheduled

18   either, hopefully through Court order or voluntarily, to return

19   from here to Bellevue where they are waiting for him to readmit

20   him.  The surgery is obviously not going to take place today.

21   But it could take place as early as tomorrow.  And certainly no

22   later than next week.

23           I have been assured, and Mr. Burden was assured, that

24   if the Court were to release him and he went -- and he went

25   back to Bellevue, that the fact that he is obviously at the

moment uninsured would not be a problem, they are capable of

taking him back in.  They want to take him back.  The doctors

are very concerned about him.  All of the arrangements that

will be necessary for him to get in will be made upon his

return, one way or another.  So, I can't give you a long-term

prognosis, because no doctor is going to tell you that.  The

course of this disease is unpredictable.  All they can tell me

is that he will require this treatment, or a transplant, for

the rest of his life.

          THE COURT:  Any insight as to the source of the

infection that caused this?

          MR. MOSKOWITZ:  I had conversations about that with

the doctors.  And we consulted an outside doctor before we made

our submission.  The precise etiology, because of the delay in

treating the -- well, what I can tell you, is it's some sort of

infection.  What the doctors said to me was, because of the

delay in treatment, they could not tell me whether it could

have been arrested if it had been treated immediately.

Sometimes with kidney disease if it is treated early, it can be

stopped, or slowed down, so that he would not be in the

condition he is in now.  They wouldn't say to me, well, it

would never have developed to that point.  But they said with

this type of disease, if you catch it early enough, if you

treat it, you can sometimes, or often, arrest it so that you

have 10 more years, or whatever more years, until you get to

E9u0burs                        Sentence

1    the point where you need dialysis.  Because there was several

2    months of delay, by the time he got to the hospital, there was

3    no -- he required dialysis right away.  So there was no

4    treatment for it, short of the dialysis.  Those are the facts.

5            THE COURT:  Thank you.

6            MR. MOSKOWITZ:  If I may, I do want to make one

7    observation.  Your Honor is looking at Mr. Burden and sees a

8    young man who looks, for all intents and purposes, healthy.  I

9    think this is not the picture that I saw last night, I don't

10   know, 15 hours ago or less.  Mr. Burden, when I saw him, was

11   hooked up to the dialysis machine.  He looked frail.  He was

12   shaking.  He has lost weight.

13           THE COURT:  How long has he been on dialysis?

14           MR. MOSKOWITZ:  What?

15           THE COURT:  How long has he been on dialysis?

16           MR. MOSKOWITZ:  Since I think the end of April, early

17   May.  I think he actually went into the hospital May 2, May 3,

18   somewhere around there.  And, it's not an easy process.  It

19   is -- how long are you on each time, a couple of hours?

20           THE DEFENDANT:  Four hours.

21           MR. MOSKOWITZ:  Four hours.

22           It's a four-hour treatment, three times a week, so.

23   And that is so that he can move around.  I mean when he went

24   into the hospital, it was an emergency.  This time it was an

25   emergency.  The dialysis allows him to have some semblance of

E9u0burs                      Sentence

1    normalcy for that interim period.  But if he doesn't get it, he

2    immediately gets sick and gets significantly weaker.

3            The diet is another issue that has been a constant

4    problem for him.

5            THE COURT:  What is the issue with the diet?

6            MR. MOSKOWITZ:  The issue with the diet is he can't

7    eat what they are giving him.  It makes him sick?

8            THE COURT:  Says who?

9            MR. MOSKOWITZ:  It makes him sick.  That is the simple

10   answer.  It's not, as in the hospital, he gets specific food

11   for people with, you know, that are in his condition.  The MCC

12   does not have that capability.  It's much more limited in terms

13   of their selection for inmates.  And the food that he was being

14   given was making him sick.  And so he stopped eating it, in

15   large part.

16           THE COURT:  Okay.

17           MR. MOSKOWITZ:  So.

18           THE COURT:  Thank you.

19           Mr. Burden, you have an absolute right to address the

20   Court before I impose sentence.  Is there anything that you

21   wanted to say?

22           THE DEFENDANT:  Yes.

23           THE COURT:  Yes, sir.  You can remain seated.  Just

24   speak clearly into the microphone, okay?

25           THE DEFENDANT:  All right.

E9u0burs                          Sentence

1              First, I would like to say good afternoon, your Honor.

2     And, well, what I would like to say, before sentence, is that,

3     yeah, I did, you know, plead guilty to the crime at hand.  And

4     I did have time, you know, because you don't -- people in life

5     don't really get a chance to look at theirself from the outside

6     point of view.  And I got the chance to see how, you know,

7     pathetic that video was, you know.  How sorry I looked.  And

8     what everything was costing me.  And I have a -- I had two

9     years to figure out everything, and where everything was

10    heading.  And then for me to get sick, it puts me right exactly

11    where -- you know, it puts me -- like it forces me on a track

12    that I don't -- I don't -- I don't want to be on, but I have to

13    be on.  And it's like only thing I could think of is how long

14    I'm going to have left, and how much time I'm going to get to

15    spend with my peoples.  Because there is never gonna be an

16    exact prognosis or exact prediction on how anything would turn

17    out, as far as the kidneys.  And every single day I go to

18    sleep, and I wake up, I thank God to be woken.  Because at any

19    given time, any given time, I could go into a state where it's

20    the point of no return.  At any given time, this could happen

21    for me.

22             Only thing dialysis does is keeps me alive.  Just

23    because I'm on dialysis, doesn't even mean that it's gonna work

24    for me.  Some weeks dialysis doesn't even work for me and I

25    have to be hospitalized, because of my potassium level remains

E9u0burs                     Sentence

1   high, my cholesterol remains high.  Just because I get

2   dialysed, don't mean anything.  And when -- that being said, it

3   is like, I -- I -- I just -- I just want -- I just want

4   somehow, some way, if -- if -- if that's gotta be the rest of

5   my life, can I please have a chance to make things right.  Can

6   I please have a chance to make things right.  If I don't have

7   that much time.  And if I get this kidney transplant and it

8   doesn't work.  And that time being, until then, can I please

9   have a chance to right my wrongs, and get as far away from as

10  who I used to be as possible.  Please, your Honor.

11          Thank you for giving me the chance to speak.

12          THE COURT:  Thank you, Mr. Burden.

13          And in deciding what sentence to impose, I have

14  considered all of the factors set forth in Section 3553(a) of

15  Title 18 of the U.S. Code including, as most directly relevant

16  to this case, the nature and circumstances of the offense, and

17  the history and characteristics of Mr. Burden.

18          I have considered the need for the conditions imposed

19  to reflect the seriousness of the offense, to promote respect

20  for the law, to provide a just punishment for the offense, and

21  to afford adequate deterrence to the criminal conduct.  To

22  protect the public from further crimes on behalf of Mr. Burden.

23  And to provide the defendant with needed medical care or other

24  treatment in the most effective manner.

25          I have considered the need to avoid unwarranted

E9u0burs                    Sentence

sentence disparities among similarly-situated defendants.

         And in light of all that, this remains an incredibly
difficult sentence to impose.  Obviously, it was a very serious
crime, with tragic consequences.  I presided over the trial of
the three co-defendants and was able to see, through the
testimony of the various cooperating witnesses, the environment
in which Mr. Burden was raised.  And I was struck by the truly
disturbing lack of appreciation on the part of all of those
young men -- and they were all teenagers, practically.
Mr. Burden included -- of the fragility and sanctity of human
life, much less the danger that they exposed themselves to on a
daily basis.  Much less a lack of respect for the rule of law.

         It truly was, as one of the defense lawyers put it in
his opening statement to the jury, that the jury would have to
enter another world in order to try to understand what it was
that motivated these young men.

         And, indeed, I was very struck by this testimony.
There was testimony about Mr. Burden, himself, being shot in
the leg by a friend, as a favor so as not to have to shoot
Mr. Burden in the face, as the friend had been instructed to
do.

         Did I get that basically right, Mr. Bauer?

         MR. BAUER:  It was in the foot, your Honor.  But, yes,
it was in order to save -- the other -- the other people wanted
to shoot Mr. Burden in the face.  And so he said, no, I'll take

1    care of it.  And he shot him in the foot instead.

2            And that's what counts as being kind and generous in

3    the Newburgh in which Mr. Burden grew up.  To be sure, no one

4    in this room should be terribly surprised that Mr. Burden came

5    to live the life that he did, or should be terribly surprised

6    that he would see the need, or the attraction of joining a gang

7    like The Bloods.

8            He is a person about whom it can be fairly said that

9    he barely had a chance in life.  His father abandoned him.  His

10   mother was unable to care for him as a result of her

11   addictions.  And his grandmother, who was kind enough to bring

12   him in, was overwhelmed by having to raise her daughter's

13   children, and sought at times to have him put in a half-way

14   house.

15           Mr. Burden suffered from a number of mental conditions

16   that required medication and treatment, perhaps some of which

17   he went without, and caused him to be hospitalized at least

18   five times as a boy.

19           At the same time, the Court cannot overlook the

20   immensity of the criminal conduct that Mr. Burden has admitted

21   to.  A man is dead.  And Mr. Burden played a supporting role in

22   his death.  And I appreciate the comments of counsel, and the

23   government, that Mr. Burden had no idea that that would be the

24   result.

25           And the sentencing guidelines reserve the most serious

E9u0burs                    Sentence

sentences for cases such as this.  And I also appreciate that

Mr. Burden has been granted an extraordinary benefit already by

being allowed to plead guilty to an offense that is limited to

no more than 10 years of incarceration.  I also consider that

this is not the first time Mr. Burden has appeared before a

Court.  He does have a criminal history, which is not a

terribly impressive criminal history, but a criminal history,

nonetheless, that includes orders of protection that were put

in place with respect to certain of his family members.

        Finally, there is the fact of Mr. Burden's physical

condition.  I don't have a medical report from Mr. Burden's

treating physician, so I have no idea of the seriousness of his

current condition, and what the prognosis is.

        I accept counsel's representation, because counsel is

representing as an officer of the Court and because of the

Court's general knowledge, that typically speaking when someone

is caused to be on dialysis that is something that they don't

get better from.  Dialysis has to continue, or some other,

something else has to happen, like a transplant.  And certainly

the fact that he is on dialysis suggests that his condition is

very serious, indeed.  And because of that, his incarceration

will therefore be significantly more onerous than that of the

average defendant.

        With respect to the deterrent, I do believe that there

is an argument to be made that general deterrence requires that

E9u0burs                              Sentence

Mr. Burden be made to serve some additional time in prison.

              And, in any event, for all of those reasons, it is the
judgment of the Court that Mr. Burden be sentenced, and be
committed to the custody of the Bureau of Prisons for 48 months
on the count of conviction.  That will be followed by three
years of supervised release.  The conditions of supervised
release in the presentence report will be adhered to; that is
to say, the standard conditions 1 through 13, as well as the
standard mandatory conditions.

              In addition, I will require that he participate in a
program to determine whether he has reverted to using drugs or
alcohol; that he be made to participate in a program, a mental
health program; and that he shall continue to take any
prescribed medications unless instructed to by the healthcare
provider; that he submit his person and residence to -- his
premises to a search by the probation office, if the probation
officer has reasonable belief that contraband or evidence of a
violation of the conditions of release may be found; and that
he report to the nearest probation office within 72 hours of
release from custody.

              I should also note that the reason for the substantial
variance from the guidelines is also because he will be away
from his family if, as everyone expects, he is designated to
either Devons or Butner or some other similar facility.  And I
am familiar with those facilities, and know that they will be

1    able to provide Mr. Burden with the medical treatment that he

2    requires during the balance of his incarceration.

3            Does counsel know of any legal reason, other than what

4    has already been stated, that the sentence should not be

5    imposed as stated.

6            MR. BAUER:  No, your Honor.

7            MR. GINSBERG:  No, your Honor.

8            THE COURT:  Very well, then.

9            Mr. Burden, it is the judgment of the Court that you

10   be committed for 48 months on the count of conviction.  That

11   will be followed by three years of supervised release.  I also

12   order you to pay a special assessment in the amount of $100,

13   which shall be due immediately.  I will not impose a fine, as I

14   find that you are not able to pay a fine.

15           I take it the government is not seeking forfeiture?

16           MR. BAUER:  No, your Honor.

17           THE COURT:  Are there any open counts?

18           MR. BAUER:  There are, your Honor.

19           Mr. Burden pled guilty to the S-2 Information.  The

20   government moves to dismiss the counts in the underlying

21   indictment, as well as the S-1 indictment.

22           THE COURT:  That application is granted.

23           Mr. Burden, because of your plea agreement with the

24   government, I understand that your appellate rights are fairly

25   limited.  But, Mr. Ginsberg, will you assure me, and Mr.

1    Moskowitz, will you assure me that you will speak with

2    Mr. Burden about the sentencing, the appellate rights that he

3    has, such as they may be, and that he do so as soon as

4    possible.

5              MR. GINSBERG:  We will, your Honor.

6              THE COURT:  Are there any other applications, Mr.

7    Ginsberg?

8              MR. GINSBERG:  Yeah.  I think that, before we leave,

9    your Honor, we need to make sure, however, that he needs to

10   be -- that, your Honor, if you can, if you have the authority

11   at this point, order that Mr. Burden be taken back to Bellevue

12   Hospital, which I believe is consistent with my understanding

13   of what Adam Johnson, who is the head of the Legal Department

14   at the MCC wants.  And I believe it was also consistent with my

15   understanding of what the marshals wanted.  Because they don't

16   want to have to deal with the medical situation back in the MCC

17   and retransport him to Bellevue.

18             So if that can be accomplished, or it needs some

19   writing to be accomplished before he leaves the building, so

20   that they can take him directly there.  Whatever needs to be

21   done, I would appreciate that that be taken care of.

22             MR. MOSKOWITZ:  If I just might add a little bit to

23   that.  The goal here, as I understood it in my conversations

24   with Mr. Bauer and communications with Mr. Johnson, is that if

25   Mr. Burden goes back to Bellevue, as I think all of the parties

E9u0burs                          Sentence

1    had anticipated, he will have the surgery within the next week

2    or so, at the latest, and whatever time that he will require to

3    recuperate.  It is our hope that the government, working with

4    the Bureau of Prisons, will be able to accomplish the

5    designation to a medical facility in an expedited fashion, so

6    by the time he is ready to be released from Bellevue, post op,

7    he will be able to go directly to the medical facility so that

8    we won't have a repeat of any of the problems at the MCC.  And

9    I think the MCC really does not want him back.  I know he

10   doesn't want to go back.  And I think it would be best for all

11   concerned if we can accomplish that with your Honor's help.

12          THE COURT:  Well, it sounds like that is what everyone

13   wants to happen.  And I don't know that -- first of all, I

14   don't know that an order is required, since that is what the

15   MCC wants to do.

16          Secondly, I don't know that an order would be

17   appropriate, since he will be in their custody.

18          Moreover, in connection with a situation like this, I

19   am very reluctant to enter an order affecting the medical

20   treatment that someone is getting, or should be getting, as I

21   have no insight in that regard, and I could be ordering

22   something that is contraindicated.

23          MR. GINSBERG:  I'm not asking for medical treatment.

24   Maybe I should have put it a different way.  Just as if I would

25   be asking your Honor, in a different situation, to recommend a

E9u0burs                        Sentence

1    facility of placement, I would recommend -- I would ask your

2    Honor to recommend that Mr. Burden be taken back to Bellevue

3    Hospital, and then allow the process to go forward from there.

4              THE COURT:  I'm happy to make that recommendation.

5    And I'm happy to do that.  I know members of the marshal

6    service are here.

7              Is there any particular recommendation or direction

8    that you need, from me, in order to have Mr. Burden taken back

9    to the hospital.

10             THE MARSHAL:  I don't think so, your Honor.  Because

11   they brought him from the hospital, here, so they are going to

12   bring him right back, I understand.  Probably, as I understand

13   it, he has to go back for the surgery.

14             THE COURT:  Very well.

15             THE MARSHAL:  I would think they are waiting on us to

16   bring him back to the MCC or back to Bellevue, probably have

17   transport teams waiting for us to bring him back.

18             MR. BAUER:  That's all consistent with my

19   conversations with Jim Kahn, who is in charge of the inmate

20   movement here for the marshals.  And what I'll say is that

21   we'll also move expeditiously to have his designation be made.

22             And so I'll renew what I asked earlier, which would be

23   if your Honor can enter the judgment as soon as possible.

24             THE COURT:  Yeah, we'll try to do that today --

25             MR. BAUER:  Okay.

E9u0burs                        Sentence

1          THE COURT:  -- okay, and --

2          MR. BAUER:  And if you could put in that judgment,

3     I'll make the application that I'm sure they were going to,

4     asking you make that recommendation that he be designated to a

5     medical facility appropriate for his condition, such as --

6     however you want to say it -- such as Butner or Devons.

7          THE COURT:  Very well.  I'll make that recommendation.

8          THE DEFENDANT:  Thank you, your Honor.

9          THE COURT:  Anything further?

10          MR. BAUER:  Not from the government, your Honor.

11          MR. GINSBERG:  Thank you very much for your

12     consideration, your Honor.

13          THE COURT:  In that event, we're adjourned.

14          Mr. Burden, good luck to you, sir.

15          THE DEPUTY CLERK:  All rise.

16          (Adjourned)

17

18

19

20

21

22

23

24

25